# 16-0370-CV

## United States Court of Appeals
### for the
### Second Circuit



In Re

Ex Parte application of GUY GISSIN, solely in his capacity as Court appointed
liquidator of Sybil Europe Public Co. Limited, for an Order pursuant to
28 U.S.C. 1782 to conduct discovery for use in a fo

_____

GUY GISSIN,

*Petitioner-Appellee,*

– v. –

ALAN FREEDMAN, MOORE CAPITAL MANAGEMENT, LLC,
LM MOORE SP INVESTMENTS, LTD.,

*Respondents-Appellants,*

LM MOORE, L.P.,

*Respondent.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLANTS

Nancy Chung
Christina Prusak Chianese
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-6070

– and –

Christopher M. Egleson
SIDLEY AUSTIN LLP
555 West 5th Street, 40th Floor
Los Angeles, California 90013
(213) 896-6108

*Attorneys for Respondents-Appellants*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Appellants Moore Capital Holdings, LLC (formerly known as Moore Capital Management, LLC) and LM Moore SP Investments, Ltd. are privately held companies.  No publicly held corporation owns 10% or more of Moore Capital Holdings, LLC or of LM Moore SP Investments, Ltd.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ........................................................2

STATEMENT OF ISSUE FOR REVIEW ..............................................3

ORAL ARGUMENT ..............................................................................3

FACTS ....................................................................................................3

I.      Legal framework..........................................................................3

II.     Factual background......................................................................6

        A.      The Sybil Europe liquidation ............................................6

        B.      The § 1782 application .....................................................6

STANDARD OF REVIEW .....................................................................9

SUMMARY OF ARGUMENT ...............................................................9

ARGUMENT .......................................................................................11

I.      The district court erred in concluding that the requested discovery is
        "for use" in a foreign proceeding. .............................................11

        A.      Section 1782 does not authorize discovery so a party can
                explore whether it has claims and decide whether to sue. .................11

        B.      Discovery for a party's own use is not allowed, and that is no
                different for a foreign liquidator, so the district court erred. ..............14

        C.      The discovery Applicant seeks is not intended for use in the
                foreign liquidation itself, so the pendency of that proceeding
                cannot save the district court's decision.............................................16

        D.      *Lancaster* does not authorize Applicant's discovery. ..........................17

II.     Applicant's recent admissions before this Court call the district
        court's decision further into question. .........................................21

        A.      These subsequent admissions warrant reversal...................................21

        B.      At minimum, the post-order admissions bear on the district
                court's discretion and require a remand. .............................................24

CONCLUSION....................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
747 F.3d 1262 (11th Cir. 2014) ........................................................................12

*Bravo Express Corp. v. Total Petrochemicals*,
613 F. App'x 319 (5th Cir. 2015) ...................................................................13

*Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015) ....................................................................*passim*

*Chevron Corp. v. Berlinger*,
629 F.3d 297 (2d Cir. 2011) ...............................................................................2

*In re Doe*,
860 F.2d 40 (2d Cir. 1988) .........................................................................4, 22

*Euromepa, S.A. v. R. Esmerian, Inc.*,
154 F.3d 24 (2d Cir. 1998) .........................................................................5, 16

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) .........................................................................................21

*Glock v. Glock, Inc.*,
797 F.3d 1002 (11th Cir. 2015) .......................................................................22

*Hong Mai Sa v. Doe*,
406 F.3d 155 (2d Cir. 2005) .......................................................................8, 21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ...............................................................................*passim*

*Lancaster Factoring Co. Ltd. v. Mangone*,
90 F.3d 38 (2d Cir. 1996) ......................................................................*passim*

*In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*,
385 F.2d 1017 (2d Cir. 1967) .................................................................2, 15, 16

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ............................................................................ 4

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ........................................ 5, 13, 16, 17

*Metallgesellschaft v. Hodapp*,
    121 F.3d 77 (2d Cir. 1997) .............................................................. 24

*Nutritional Health Alliance v. FDA*,
    318 F.3d 92 (2d Cir. 2003) .............................................................. 21

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) .............................................................. 24

*United States v. Estate of Romani*,
    523 U.S. 517 (1998) .......................................................................... 21

## Statutes & Rules

11 U.S.C.
    § 1501 ............................................................................................... 20
    § 1504 ............................................................................................... 20
    § 1515 ............................................................................................... 20

28 U.S.C.
    § 1291 ................................................................................................. 2
    § 1331 ................................................................................................. 2
    § 1782 ..................................................................................... *passim*

Fed. R. Bankr. P. 2004 ..................................................................... 20

## INTRODUCTION

This is an appeal from an order granting exploratory pre-litigation discovery to the liquidator ("Applicant") of a Cyprus limited-liability company. The district court allowed Applicant (the appellee here) to take "broad discovery" under 28 U.S.C. § 1782 from the appellants, U.S. entities that invested in the Cyprus company (the "Investors"). The purpose of the discovery is so Applicant can develop a basis for suing the Investors.

The district granted Applicant's § 1782 application on the ground that the discovery would be "useful to the liquidator" to decide whether to pursue claims against the Investors. JA-241. That was wrong, because § 1782 allows discovery for use before a foreign tribunal, but disallows exploratory discovery by a party that has not yet decided whether to sue. *See Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.* ("*Fortress Funds*"), 798 F.3d 113, 117 (2d Cir. 2015). Applicant nevertheless insists that, whatever rules may apply to other aspiring litigants, a foreign liquidator is different because the pendency of a foreign bankruptcy proceeding means the doors to discovery are wide open.

The problem for Applicant is that he did not and cannot identify any actual "use" to which he would put the material in the liquidation proceeding—which is what § 1782 requires. Applicant rested instead on the material being of use to him

in deciding whether he should sue the Investors. This Court has long held, however, that § 1782 does not allow a partisan investigator charged with seeking a particular outcome to get discovery. *In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India* ("*In re Indian Letters Rogatory*"), 385 F.2d 1017, 1019, 1021–22 (2d Cir. 1967) (Friendly, J.). Applicant would rather cast off that holding and squeeze instead into the holding of *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38 (2d Cir. 1996), to justify his request. But *Lancaster* is a glass slipper that will not fit, and Applicant is left with no authority at all to support his claim of a special entitlement as a foreign liquidator to take whatever discovery he wants in preparation for bringing a potential lawsuit.

For all of these reasons, as more fully set out below, the district court's order should be reversed. Moreover, among other problems, Applicant's more recent admissions reveal that his goal is to use the material he gets here against the Investors in the United States. Section 1782 does not allow discovery to help a party sue in the United States, and these belated admissions require reversal or, at minimum, a remand. This Court should therefore reverse.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this matter under 28 U.S.C. §§ 1782 and 1331. An order granting discovery under § 1782 is final and appealable under 28 U.S.C. § 1291. *See, e.g.*, *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d

Cir. 2011).  The district court entered an interim order on January 7, 2016 granting Applicant's § 1782 application and allowing the service of subpoenas (JA-249) and on February 5, 2016 entered a final order compelling compliance with those subpoenas on specified terms (JA-251).  This appeal was timely noticed on that same date.  JA-259.

## STATEMENT OF ISSUE FOR REVIEW

Whether, unlike any other civil plaintiff, a foreign liquidator may take prelitigation discovery under 28 U.S.C. § 1782 to investigate speculative potential claims in order to decide whether to commence litigation.

## ORAL ARGUMENT

Oral argument is respectfully requested.

## FACTS

### I. Legal framework

Under 28 U.S.C. § 1782(a), a district court may compel the production of documents or testimony "for use in a proceeding in a foreign or international tribunal."[1]  The statute's "objective" is "to assist foreign tribunals in obtaining relevant

---

[1] 28 U.S.C. § 1782(a) reads in full:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has

3

information that [they] may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004).

A district court has discretion to grant § 1782 discovery only if the subject resides or is found in its judicial district; if the documents or testimony sought are "for use" in a proceeding before a foreign tribunal; and if the application is made by the foreign tribunal itself or, failing that, by an "interested person." *Fortress Funds*, 798 F.3d at 117. This appeal involves only the requirement that the material be "for use" in a foreign proceeding, which has been further elaborated as follows:

*The Proceeding Must Be Foreign:* First, the tribunal must be foreign and not domestic: "Section 1782 is a provision for assistance to tribunals *abroad*." *Intel*, 542 U.S. at 263 (emphasis added).[2]

---

power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

[2] *See also In re Doe*, 860 F.2d 40, 48 (2d Cir. 1988) ("[T]his case falls outside the scope of § 1782" because "[t]hese subpoenas are directed against United States residents in connection with a United States investigation."); *Massachusetts v. EPA*, 549 U.S. 497, 557 (2007) ("Certainly this provision would not encompass criminal investigations underway in a *domestic* tribunal.").

4

*The Proceeding Must Be Adjudicative:* Second, the tribunal must be "adjudicative." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). It does not have to be a "conventional court[]," but must have the "the complete objectivity normally associated with a 'tribunal.'" *In re Indian Letters Rogatory*, 385 F.2d at 1019. An investigative body lacking the requisite "separation between the prosecutorial and adjudicative functions" or that has "an institutional interest in a particular result" does not count. *Id.* at 1020, 1021.

*Speculative Potential Proceedings Do Not Count:* Third, the proceeding must be pending already, or if it is not, a judgment must be in "reasonable contemplation." *Intel*, 542 U.S. at 259. If the proceeding has not begun, the "applicant must have more than a subjective intent to undertake some legal action," and must make an "objective showing" of "some concrete basis from which [a court] can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Fortress Funds*, 798 F.3d at 123–24.

*Actual Use Must Be Shown:* Fourth, and finally, the material must be intended to be "put before the foreign tribunal[]" (*id.* at 122), with the goal of "increas[ing]" the party's "chance[] of success" there (*Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)). "[A] request that fails to show that the materials sought will be of any use in the foreign proceeding" does not "satisfy the 'for use' requirement." *Id.* at 299 n.10 (internal quotation marks omitted).

5

## II.     Factual background

### A.     The Sybil Europe liquidation

Sybil Europe Public Co. Ltd. is a Cyprus company that owned and managed properties in Eastern and Central Europe.  JA-219.  One of the Investors, a Bahamas investment fund named LM Moore SP Investments, Ltd., previously owned a 24% minority stake in Sybil Europe.  JA-220.  That fund loaned $10.4 million to Sybil Europe in April 2006, which it converted into equity later that year.  JA-221. It loaned a further EUR 10 million to an indirect subsidiary of Sybil Europe in January 2009.  *Id.*  The fund had the right to appoint a director to the board, but waived that right.  *Id.*  It relinquished its 24% equity stake in Sybil Europe on October 21, 2010.  *Id.*

Applicant served as the trustee for certain Sybil Europe Israeli bondholders, and initiated liquidation proceedings against Sybil Europe before a district court in Israel on October 28, 2010.  *Id.*  He was appointed as Sybil Europe's liquidator. *Id.*  He has the power to investigate Sybil Europe's operations and to collect and liquidate assets.  JA-221–22.

The Investors are not parties to the Israeli liquidation.  JA-236.

### B.     The § 1782 application

On November 2, 2015, more than five years after Applicant's appointment, Applicant filed an *ex parte* application under § 1782 seeking discovery from the Investors.  JA-9.  In the district court's words, Applicant sought "broad discovery,"

6

through document production and depositions, "related to the relationship between Sybil Europe and" the Investors. JA-222. As the district court explained, Applicant wants this information "to understand whether he has a claim against [the Investors] and can bring a claim." JA-236.

The Investors intervened to oppose the application on the ground that it sought exploratory pre-litigation discovery. JA-261. They further argued, *inter alia*, that the discovery should be denied as a matter of discretion because Applicant seeks discovery against the targets of his future claims, a disfavored use of § 1782. JA-141–43.

The district court granted the application in an oral decision on January 7, 2016. The court held that Applicant's purpose—"to analyze and discover to see if there are claims that should be adjudicated or not"—satisfied § 1782's "for use" requirement because such investigation "is part of the adjudicative functions that go on in a liquidation." JA-241. The court found support in this Court's decision in *Lancaster*, which gave discovery to a bankruptcy trustee seeking to locate a bank account holding stolen funds. The court did not address the Investors' discretionary arguments. The court memorialized the relief it had granted in a written order entered that same day. JA-249–50.

In its decision, the court required the parties to confer regarding the particulars of scope and timing. In light of the court's order authorizing the discovery, the

Investors agreed to produce all documents related to Sybil Europe or any of its subsidiaries dating from before their initial investment in 2006 through the end of 2010, the year in which Sybil Europe entered liquidation, and to offer the witness that Applicant sought to depose for a two-day deposition.  JA-251–52.  The parties' stipulation preserved the Investors' right to appeal the court's order authorizing discovery and to seek a stay pending appeal.  JA-257.  The court endorsed the parties' stipulation and entered it as an order of the court on February 5, 2016, and the Investors noticed this appeal that same day.  JA-258; JA-259–60.

After noticing their appeal, the Investors sought a stay pending appeal in the district court.  During the hearing on the stay motion, the court noted that Applicant remained unable to articulate "the potential wrongdoing" under investigation and appeared to be "embarked" on a "fishing expedition."  Investors' Stay Mot., Ex. H at 16–17 (Doc. No. 20 at 217–18).[3]  The district court told Applicant's counsel that "the more you speak . . . the less I am willing to go along with my earlier ruling" and "the less I'm convinced that there is an adjudicatory process that is involved."  *Id*. at 17 (Doc. No. 20 at 218)*.*  The court ultimately granted an interim stay to allow this Court to decide whether a full stay pending appeal was warranted.  Investors' Stay Mot., Ex. G (Doc. No. 20 at 192).  A single judge of this Court

---

[3] The transcript from that hearing and the district court's order granting a temporary stay are on file with this Court as part of the record on the stay motion filed here.  *See* Investors' Stay Mot., Exs. G & H (Doc. No. 20).  This Court can "take judicial notice of [its own] files as well as those of the district court."  *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005).

temporarily continued the district court's stay and referred the motion to the merits panel.  Stay Order (Doc. No. 40).

## STANDARD OF REVIEW

This Court reviews *de novo* whether the statutory "for use" requirement of § 1782 is satisfied.  *Fortress Funds*, 798 F.3d at 117.

## SUMMARY OF ARGUMENT

The district court wrongly allowed discovery under § 1782 because it would be "useful to the liquidator" to decide whether to pursue claims against the Investors.  JA-241.  That is a prohibited use of § 1782 under *Fortress Funds* and, contrary to the district court's ruling, the liquidator's decision whether to bring claims is not "part of the adjudicative functions that go on in a liquidation."  *Id.*

*Fortress Funds* bars § 1782 discovery intended to determine whether litigation claims exist, and holds that an applicant must make an "objective showing" that pursuit of any future claims is more than just a "twinkle in counsel's eye." *Fortress Funds*, 798 F.3d at 124.  Applicant here admits that he has "not yet decided" whether to sue (JA-163), so he is even worse off than the unsuccessful applicants whose discovery was rejected in *Fortress Funds.*

Applicant tried instead to argue that the discovery was "for use" in the liquidation proceeding itself rather than in some future litigation.  But he did not identify any actual "use" to which he would put the material in the liquidation proceed-

9

ing, and instead rested on the material being useful to him in determining whether to sue.  Judge Friendly explained in *In re Indian Letters Rogatory*, however, that § 1782 does not allow a partisan investigator charged with seeking a particular outcome to get discovery to further its investigation.  And while Applicant points to *Lancaster* to justify his request, that case involved a targeted search for stolen assets that the bankruptcy court would help recover, not a fishing expedition for material that a foreign trustee hopes to use in new litigation that he has not yet decided whether to file.

For all of these reasons, as more fully set out below, the district court's order should be reversed.  Moreover, Applicant's more recent admissions in the stay pleadings have undermined his entitlement to relief.  Before obtaining his order, Applicant maintained that the discovery was for use in the foreign liquidation proceeding.  Now that he has his order, his declarations admit that his aim is not use in the Israeli liquidation but rather use in litigations in Israel and Cyprus and, most damningly, against the Investors in the United States.  Section 1782 does not allow discovery to help a party sue in the United States, and these belated admissions require reversal or, at minimum, a remand.

# ARGUMENT

**I.**  **The district court erred in concluding that the requested discovery is "for use" in a foreign proceeding.**

**A.**  **Section 1782 does not authorize discovery so a party can explore whether it has claims and decide whether to sue.**

No party is entitled to use § 1782 to investigate whether it has a claim. The statute only permits discovery that is "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Where a foreign proceeding is not yet pending, a judgment must at least be within "reasonable contemplation." *Intel*, 542 U.S. at 259. Applying that rule, this Court's most recent § 1782 decision demands that an applicant "[a]t a minimum . . . present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Fortress Funds*, 798 F.3d at 124. "[M]erely speculative" proceedings do not qualify. *Id.*

As the district court found, Applicant's purpose in seeking discovery here is to explore potential claims against the Investors. JA-241. But Applicant has not commenced that litigation, and his application offered no "concrete basis" on which the court could conclude that Applicant can or will ever do so. Far from it. Instead, he conceded the opposite: that, five-and-a-half years after he petitioned to commence the Sybil Europe liquidation on behalf of the creditors he represents, Applicant has still "not yet decided" whether to pursue claims against the Investors (or anyone else). JA-163. He offered no factual basis for suggesting that he might

11

have a claim against the Investors. That he is seeking pre-litigation discovery rather than pursuing claims confirms that he has no basis to sue, and no intention to do so.

That should have doomed the application, because under *Fortress Funds*, "a district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Fortress Funds*, 798 F.3d at 123 (quoting *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014)). In *Fortress Funds* the § 1782 applicants were investment funds that had lost money in a fraudulent scheme. They told the district court that they firmly intended to initiate three different actions, in three jurisdictions, and that they sought the discovery for use in those actions. Their request was denied. This Court affirmed, because the applicants had failed to demonstrate "more than a subjective intent to undertake some legal action." *Id.* The Court held that they needed to "provide some objective indicium that the action [was] being contemplated" to justify discovery under § 1782. *Id.*

Here, five years have passed and Applicant has not sued, and he admits that he is undecided whether he will. JA-163. So Applicant's litigation planning lacks even the degree of certainty that was present, but still insufficient, in *Fortress Funds. Fortress Funds* was also a stronger (but not strong enough) case in another

12

regard, for the applicants there also had a factual basis for believing that wrongdoing had occurred: they had invested $380 million in two Saudi conglomerates that were then pillaged by an embezzler, leading regulators to freeze the conglomerates' assets. *Fortress Funds*, 798 F.3d at 115. This Court could have inferred from the evident strength of the applicant's claims that they were indeed likely to bring suit, but it did not. Here, Applicant has offered zero factual basis for concluding that a claim exists. That makes any future proceeding that much more speculative than the (already too-speculative) future proceedings in *Fortress Funds*.[4]

In all, then, Applicant has provided the opposite of what *Fortress Funds* requires: rather than the "objective showing" that litigation against the Investors (or against anyone at all) is within "reasonable contemplation" (*id.* at 124), Applicant has admitted that any future litigation is purely speculative. Since *Fortress Funds*

---

[4] The application here thus differs from those in other cases in which courts have found future proceedings to be in "reasonable contemplation." In those cases, applicants have been able to point to and articulate a specific claim and an objective basis for concluding that a proceeding will be commenced. In *Mees*, for example, the applicant specified the conduct by the prospective defendant that gave rise to a defamation claim, and explained that it needed the particular documents at issue before suing because Dutch procedure required that they be appended to the case-initiating document. *Mees*, 793 F.3d at 296. In *Application of Consorcio Ecuatoriano de Telecomunicaciones*, unlike here, the applicant provided a "facially legitimate and detailed explanation of its ongoing investigation" as well as "its intent to commence a civil action against its former employees." *Application of Consorcio Ecuatoriano de Telecomunicaciones*, 747 F.3d at 1266, 1271. And in *Bravo Express Corp. v. Total Petrochemicals*, 613 F. App'x 319, 323 (5th Cir. 2015), the applicant provided a "claim of particulars" and explained that it needed the material before suing because UK procedure required it to present its evidence at the commencement of the contemplated action. In this case, Applicant admits not knowing whether he has a claim and nowhere suggests that he is facing some procedural impediment to suit. The district court itself later noted Applicant's inability to articulate any "potential wrongdoing." Investors' Stay Mot., Ex. H at 16–17 (Doc. No. 20 at 217–18).

13

holds expressly that "the proceedings" for which an applicant seeks the discovery "cannot be merely speculative" (*id.*), Applicant's admission should have been fatal to the application, and this Court should reverse.

### B. Discovery for a party's own use is not allowed, and that is no different for a foreign liquidator, so the district court erred.

If Applicant were not a foreign liquidator, even he would likely concede that *Fortress Funds* would bar his application. So the question that his application requires this Court to answer is whether, unlike any other prospective civil plaintiff, a foreign liquidator in particular may take pre-litigation discovery under § 1782 to investigate speculative potential claims in the hopes of discovering a basis to sue.

The district court held that the answer is yes. The liquidator's *own* decisionmaking whether to pursue claims, the district court held, was "part of the adjudicative functions that go on in a liquidation" and brought this case under § 1782. JA-241 (emphasis added). If the district court's order were correct, the pendency of a foreign bankruptcy proceeding would always give a foreign liquidator a hook to discover material that may be "useful to the liquidator" to "analyze and discover to see if there are claims that should be adjudicated or not" and to "liquidate" those claims if they exist. *Id.*

That is not the law, however. The district court's mistake was allowing discovery useful to the liquidator rather than to any foreign tribunal. An interested party's own motivated use of the discovered material is not what § 1782 is for.

14

Judge Friendly's foundational 1967 opinion in *In re Indian Letters Rogatory* rejects the theory that a party's investigation in pursuit of its own recovery is a permitted use for § 1782 discovery.

In that case a foreign tax assessor sought discovery to aid it in assessing income tax, but the Court held that the statute does not authorize that kind of investigatory use. What doomed the application was "the absence of any degree of separation between the prosecutorial and adjudicative functions" of the assessor. *In re Indian Letters Rogatory*, 385 F.2d at 1021. The Court held that tax assessors "do not have, and are not supposed to have, the complete objectivity normally associated with a 'tribunal,'" and that it did not help that the foreign law provided procedures for being heard before the assessor, because even "[a] fair assessor is still an assessor, not a 'tribunal' as that term is used in ordinary speech." *Id.* at 1021–22.

Applicant here lacks even the neutrality the tax assessor there had. Applicant has recently defended the district court's decision on the ground that he is "not like a private party" and that he himself as "liquidator . . . exercises . . . adjudicative powers," so that he is entitled to take discovery to aid his own decisionmaking about whether to commence litigation. Applicant's Stay Opp. at 13 (Doc. No. 33 at 19). But his admitted and undisputed role is to work "for the sake of creditors" and to seek "recovery" for them. *See id.*, Ex. 2 at 7, 8 (Doc. No. 33 at 72, 73). Applicant thus neither has nor claims the "complete objectivity normally associat-

15

ed with a 'tribunal'" that *In re Indian Letters Rogatory* demands (385 F.2d at 1021), and that case leaves no room for the district court's conclusion that Applicant is entitled to take discovery for his own use.

### C. The discovery Applicant seeks is not intended for use in the foreign liquidation itself, so the pendency of that proceeding cannot save the district court's decision.

Applicant cannot save the district court's decision by suggesting that the material has some "use" in the Israeli liquidation court itself, because there is nothing being adjudicated by that court to which the material relates. To be discoverable under § 1782, the requested material must be intended to be "put before the foreign tribunal[]" (*Fortress Funds*, 798 F.3d at 122), with the goal of "increas[ing]" the party's "chance[] of success" there (*Mees*, 793 F.3d at 299).

This Court has thus rejected a discovery request—notwithstanding that it was related to a bankruptcy proceeding—where there was "nothing . . . being adjudicated" by the bankruptcy court. *Euromepa*, 154 F.3d at 28. There a debtor sought discovery from his opponent in a prior civil litigation, purportedly "for use" in an ongoing bankruptcy. *Id.* at 25–26. The bankruptcy proceeding was still pending, but the only issue before the bankruptcy court that the parties could point to was the enforcement of a final judgment. This Court held that the proceeding offered no hook for discovery, because there was no open question in the foreign proceeding to which the discovery related. *Id.* at 28. The situation here is similar,

because like the applicant in *Euromepa*, Applicant here did not and cannot identify a question pending before the Israeli court that the discovery will help resolve.

Applicant thus fails to provide any indication of how "the materials sought will be of any use in the foreign proceedings" or will "increase" his "chances of success" there. *Mees*, 793 F.3d at 299 & n.10. He cannot show how or why they would be "put before" the Israeli court. *Fortress Funds*, 798 F.3d at 122. Because there is no demonstrated "use" for the discovery in the Israeli proceedings, the district court's order authorizing that discovery should be reversed.

## D. *Lancaster* does not authorize Applicant's discovery.

Applicant's basic position, however, is that this Court's 1996 decision in *Lancaster* authorizes the discovery here. The Court there held that a foreign bankruptcy proceeding is a "proceeding" within the meaning of § 1782. *Lancaster*, 90 F.3d at 42. Applicant, and the district court, read *Lancaster* more broadly to authorize any discovery that may be useful to the liquidator (JA-241) in assessing potential claims. But *Lancaster* cannot bear that heavy reading.

First, *Lancaster* decided only whether a bankruptcy may count as a "proceeding" under § 1782.[5] The opinion recounts that "[t]he principal requirement

---

[5] The discovery target argued in the district court only two principal grounds: that the applicant "had not shown that it was an 'interested person' or that there would be a 'proceeding' within the meaning of that section." *Lancaster*, 90 F.3d at 40. On appeal the target abandoned the "interested person" argument (*id.* at 42), so the only question was whether a qualifying proceeding was pending or imminent. All other arguments, which would have included any argument made about whether the material was properly "for use" in the bankruptcy proceeding,

17

imposed by § 1782 is that the requested discovery be for use in 'a proceeding,'" meaning a "proceeding in which an adjudicative function is being exercised." *Id.* at 41. It concluded that because a bankruptcy proceeding is where the "value of the debtor's estate is adjudicated," it is a "proceeding" for purposes of § 1782. *Id.* at 42. At issue here is not whether a potentially qualifying proceeding is ongoing, but whether the evidence sought is intended for use there. That question was not even pressed before the district court in *Lancaster*, and so was not addressed by this Court.

Second, *Lancaster* approved an effort to locate and recover missing assets. That is a typical bankruptcy purpose, and different from why the district court allowed discovery here. The *Lancaster* liquidator showed "evidence" that wrongdoers had "transferred" the debtors' money to a Florida bank and then concealed the Florida account. *Lancaster*, 90 F.3d at 40–41. The discovery, directed at a U.S. participant in the scheme, was "to find out where did this money go? Who has it? How can we recover it?" *Id.* at 41.[6] That is all different than Applicant's broad

---

were not preserved and not considered. *See id.* at 43 (court "considered all of [the discovery target's] contentions that are properly before us on this appeal").

[6] *Lancaster* is echoed in dicta in *Fortress Funds*, where the applicants sought financial discovery from the auditors of the bankrupt conglomerates in which they invested. The applicants were not trustees in the ongoing bankruptcy proceedings. The Court observed that the "information that the [applicants] could obtain regarding the firms' audits of the conglomerates might be helpful to the trustees in the liquidation proceedings in determining the proper distribution of the conglomerates' assets." *Fortress Funds*, 798 F.3d at 122. Without prejudging any application, the Court noted that "there is nothing preventing the trustees . . . from seeking discovery in U.S. courts pursuant to § 1782." *Id.* While Applicant has made much of this dicta, it

requests for all information related to the Investors' dealings with Sybil Europe. Applicant's subpoenas did not seek discovery into the whereabouts of assets. *See* JA-69–122. Applicant wants to "discover to see if there are claims that should be adjudicated" (JA-241), so its goal is pursuing future claims, not a current bankruptcy purpose.

Third, the facts here are too far removed from the facts of *Lancaster* for that case to control the outcome here. In that case, money had been stolen from the debtor, and foreign courts had already levied related criminal judgments. *Lancaster*, 90 F.3d at 40–41. The evidence showed that the target of the discovery requests knew where the stolen money was hidden. *Id.* It is one thing to allow a foreign trustee to ask a criminal co-conspirator who helped hide the money, "Where did th[e] money go?" *Id.* at 41. It is something else to allow "broad discovery" (JA-222) untethered to any grounded suspicion of wrongdoing.

Fourth, *Lancaster* was decided before Congress passed legislation governing whether, when, and how a foreign bankruptcy trustee may get discovery in the United States. Section 1782 does not speak specifically of foreign liquidators. Nothing in its legislative history indicates that Congress intended it to give them

---

says nothing about this case. "Distribution of [an estate's] assets" (*id.*) is what the bankruptcy court oversees, so it makes sense to imagine a bankruptcy trustee seeking information to be used in the bankruptcy court for that purpose. Pursuing litigation in a separate proceeding is different. *Fortress Funds* nowhere suggested, in dicta or otherwise, that a bankruptcy trustee may "seek" (let alone get) discovery for that purpose.

19

greater advantages in pursuing exploratory, pre-litigation discovery than any other aspiring plaintiff. And when Congress did enact a statute authorizing (and limiting) discovery by a foreign bankruptcy trustee, it did so in a new enactment rather than by amending § 1782.

In 2005, Congress enacted Chapter 15 of the Bankruptcy Code, which provides "effective mechanisms for dealing with cases of cross-border insolvency," including by giving U.S. assistance to "a foreign court or a foreign representative in connection with a foreign [bankruptcy] proceeding." 11 U.S.C. § 1501. A foreign liquidator may ask a U.S. bankruptcy court to recognize a qualified foreign proceeding. *Id.* §§ 1504, 1515. The recognizing bankruptcy court may then offer certain relief, which includes "the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities." *Id.* § 1521(a)(4).

Applicant contends that § 1782 authorizes district courts to give a foreign liquidator the same discovery that Bankruptcy Rule 2004 would give any domestic bankruptcy trustee (*see* JA-170), but that is not what Congress has said. Instead, in enacting Chapter 15, Congress has specified when a foreign trustee may get foreign-bankruptcy-related relief and has channeled requests for that relief through the bankruptcy courts. That more specific legislation (enacted after *Lancaster*) governs the treatment afforded to foreign liquidators, and Applicant's request

should be prosecuted and assessed, if at all, under that statute.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (later, more specific statute governs); *United States v. Estate of Romani*, 523 U.S. 517, 532 (1998) (same); *Nutritional Health Alliance v. FDA*, 318 F.3d 92, 102 (2d Cir. 2003) (same).[7] *Lancaster* thus does not authorize the discovery granted here, this Court's other precedents forbid it, and the district court's order should be reversed.

## II. Applicant's recent admissions before this Court call the district court's decision further into question.

### A. These subsequent admissions warrant reversal.

From the start of the proceedings in the district court, Applicant was as vague as he thought he could be about why he wants the discovery he seeks.  His goal was evidently to provide sparse facts and allow the district court to fill in the blanks with favorable inferences.  Having obtained the order he sought, Applicant then put (still limited) additional facts into the record in an effort to fend off the Investors' stay applications.  His subsequent admissions further undermine his entitlement to discovery.

As noted, this Court can "take judicial notice of [its own] files as well as those of the district court."  *Hong Mai Sa*, 406 F.3d at 158.  The Court should notice the admissions that Applicant has made in his post-decision filings.  Those fil-

---

[7] If a bankruptcy trustee is engaged in foreign litigation, it would have the same entitlement to § 1782 discovery as any other party.  The Investors' point here is that a foreign bankruptcy trustee gets no special treatment under § 1782.

ings confirm that reversal is warranted—or at least require a remand so that the district court can consider whether it would still have granted discovery had it known at the time what is now in the record.

In his most recent declaration, his fourth in this matter, Applicant finally admitted that he is trying to develop claims that may "have to proceed in New York, if I cannot obtain jurisdiction in Israel over New York parties, like Appellants." Gissin Decl. in Opp. to Stay Mot. at 3, ¶ 6 (Doc. No. 33 at 94). That is on top of his prior admission that, far from being able to sue the Investors in Israel, he is unable even to compel discovery from them there because the Investors "are not residents or citizens of Israel at this time." JA-189.

Together those admissions confirm that Applicant's aim is to sue the Investors in the United States. Section 1782 only authorizes discovery "for use in a proceeding in a *foreign* or *international* tribunal" (emphasis added), and so it does not authorize pre-litigation discovery to help a plaintiff state a claim in a U.S. court. *See In re Doe*, 860 F.2d at 48 ("[T]his case falls outside the scope of § 1782" because "[t]hese subpoenas are directed against United States residents in connection with a United States investigation."); *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015) ("Parties concerned in a particular case that a § 1782 applicant is attempting to use foreign litigation as a ruse for obtaining discovery in the United

22

States . . . can and should bring evidence of such chicanery to the § 1782 court's attention.").

That damaging admission in this Court comes on top of Applicant's declaration in support of a stay in the district court. In that declaration, Applicant revealed for the first time another prospective litigation plan, setting forth that he was considering filing "litigation in Cyprus" related to a Sybil Europe subsidiary named Redwheel and a third-party entity called Slomber. Gissin Decl. in Opp. to Stay Mot., Ex. 2 at 8 (Doc. No. 33 at 73). (These entities were not mentioned in the application proceedings or specified in the subpoenas.) That of course is one more (belatedly disclosed) piece of evidence that Applicant seeks the information here in support of new litigation, rather than for any "use" in the Israeli court.

But more troubling is the declaration's revelation that Applicant has not commenced the Cyprus case despite the passage of five years because "such litigation requires the significant raising and investment of funds by the Estate," and that Applicant also believes that it is "critical" to obtain the discovery to allow him to proceed with that litigation. *Id.* The declaration may play peekaboo with the facts, but the inference to be drawn is that what Applicant really wants discovery for is so he can take what he learns to creditors in an effort to raise funding that will let him launch the Cyprus and New York litigations he has been contemplating. No

statute in United States law authorizes discovery in aid of a foreign campaign to fill a litigation war chest, and the district court's order should be reversed.

### B. At minimum, the post-order admissions bear on the district court's discretion and require a remand.

At minimum, the district court should have the opportunity to consider these post-decision admissions and whether they affect its decision to grant discovery under § 1782 in its discretion.

As it stood, there were significant reasons for the district court to deny discovery as a matter of discretion here. Applicant seeks discovery from the parties he hopes to sue, which is a disfavored use of § 1782. Where a party has commenced a foreign proceeding, the Supreme Court has recognized that domestic discovery may be denied because the "foreign tribunal has jurisdiction over those appearing before it," and "can itself order them to produce evidence." *Intel*, 542 U.S. at 264; *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) (denying application where discovery was sought in U.S. from opponent in pending German litigation); *Metallgesellschaft v. Hodapp*, 121 F.3d 77, 79 (2d Cir. 1997) (if discovery is "equally available" in the foreign litigation, district court may deny § 1782 application as "duplicative"). Applicant has not yet commenced a proceeding against the Investors, but that should hurt, not help, his position. A party cannot manufacture a greater entitlement to § 1782 discovery than he would

have during litigation by waiting to file the very foreign proceeding that is the predicate for § 1782 discovery.

That concern should have led the district court to deny discovery altogether, but it takes on magnified importance now that Applicant has revealed in his sworn statements that he is contemplating using the discovery to bring suit in the United States. The need for U.S. discovery against a party to foreign proceedings "generally is not as apparent" anyway (*Intel*, 524 U.S. at 264), but where there is real concern—based on a party's own admission—that the likely use is domestic rather than foreign, that factor counsels strongly for leaving the decision on what discovery is allowed to the tribunal the parties end up litigating before. The serious concern that the discovery sought here is not for use in a foreign proceeding but rather in aid of a foreign fundraising effort for U.S. litigation only compounds the discretionary question. This Court should reverse as a matter of discretion, or, failing that, should give the district court an opportunity to consider for itself whether discovery is warranted now that Applicant's actual intentions are known.

**CONCLUSION**

For these reasons, the Investors respectfully request that this Court reverse the district court's order authorizing Applicant to take discovery under § 1782.

Respectfully submitted,

SIDLEY AUSTIN LLP

/s/ Nancy Chung
Nancy Chung
Christina Prusak Chianese
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-6070
nchung@sidley.com
cchianese@sidley.com

Christopher M. Egleson
555 West Fifth Street, 40th Floor
Los Angeles, California 90013
Tel: (213) 896-6108
cegleson@sidley.com

*Attorneys for Appellants Alan Freedman, Moore Capital Holdings, LLC, and LM Moore SP Investments, Ltd.*

March 14, 2016

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure (FRAP) because this brief contains 6,557 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word Version 2007 in size 14 Times New Roman font style.

Dated: March 14, 2016

 /s/  Christina Prusak Chianese
Christina Prusak Chianese