# 16-370-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT



In Re

Ex Parte application of Guy Gissin, solely in his capacity as Court appointed liquidator of Sybil Europe Public Co. Limited, for an Order pursuant to 28 U.S.C. 1782 to conduct discovery for use in a foreign proceeding

GUY GISSIN,

*Petitioner-Appellee,*

*v.*

ALAN FREEDMAN, MOORE CAPITAL MANAGEMENT, LLC,
LM MOORE SP INVESTMENTS, LTD.,

*Respondents-Appellants,*

*and*

LM MOORE, L.P.,

*Respondent.*

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## BRIEF FOR PETITIONER-APPELLEE

Michael S. Devorkin
Alexander K. Parachini
GOLENBOCK EISEMAN ASSOR BELL
   & PESKOE LLP
*Attorneys for Petitioner-Appellee*
437 Madison Avenue
New York, New York 10022
212-907-7300

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Appellee Guy Gissin is an individual acting solely in the capacity as court-appointed liquidator of Sybil Europe Public Co. Limited ("Sybil Europe"), which is currently under liquidation in a proceeding in the District Court, Tel Aviv, Israel. Sybil Europe is a privately-held company. Its Series-A bonds were traded on the Tel Aviv Stock Exchange Market until September 21, 2010. No publicly-held company owns 10% or more of Sybil Europe.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................1

COUNTER-STATEMENT OF ISSUE FOR REVIEW ............................2

SUMMARY OF ARGUMENT ............................................................2

STATEMENT OF FACTS ..................................................................5

1.    Background of Sybil Europe and The Appellants..........................5

2.    The Liquidator Reports to The Israel District Court in An *Ongoing* Liquidation Proceeding Before That Court, Which Has The Power to Adjudicate Issues Relevant to Liquidation......................................6

3.    The Discovery Is "For Use" in The Liquidation Proceeding. ......................12

4.    The Israel Court Expressly Directed and Approved This Discovery............14

5.    Appellants Possess Information Vital to The Israel Court and The Liquidator. ...........................................................................15

       Transactions with Sybil Europe and its Affiliates.......................15

       Unofficial Board of Sybil Europe....................................16

6.    The District Court's Decision..................................................17

ARGUMENT ..............................................................................19

I.    THE USE OF DISCOVERY FOR THE *ONGOING* LIQUIDATION PROCEEDING IN ISRAEL CONSTITUTES USE IN A PENDING FOREIGN PROCEEDING UNDER § 1782................................19

    A.    The Legal Standards Applicable to § 1782 Ensure Broad Applicability.........................................................19

    B.    The District Court Correctly Held that the Liquidator Will Use The Information in an Ongoing, Adjudicative, Liquidation Proceeding, and This Is Not a Contemplated Proceeding..................22

i

1.     The Liquidator's Proposed Use Is in The Adjudicative Liquidation Proceeding. ............................................................24

2.     Appellants' Cases Do Not Make This a Contemplated Proceeding Case. ......................................................................30

II.     APPELLANTS' NEW ARGUMENTS ARE UNTIMELY AND WITHOUT MERIT. ...........................................................33

A.     Chapter 15 of the Bankruptcy Code Does Not Repeal § 1782. ..........33

B.     The Liquidator's Statements Do Not Affect His Entitlement to The Discovery. ....................................................................35

CONCLUSION .................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ..................................................................19, 20

*Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates
    of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ...............................................................passim

*Esses v. Hanania*,
    101 F.3d 873 (2d Cir. 1996) ...............................................................31

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    154 F.3d 1095 (2d Cir. 1998) ..............................................................20, 32

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000)............................................................................34

*In re ABC Learning Centres Ltd.*,
    728 F.3d 301 (3d Cir. 2013) ................................................................10

*In re Application of Gianoli Aldunate*,
    3 F.3d 54 (2d Cir. 1993) .......................................................................10, 26

*In re Application of Hill*,
    No. M19-117, 2005 WL 1330769 (S.D.N.Y. June 3, 2005) ......................passim

*In re Barnet*,
    737 F.3d 238 (2d Cir. 2013) .........................................................22, 25, 33, 35

*In re Hughes*,
    281 B.R. 224 (Bankr. S.D.N.Y. 2002)...................................................35

*In re Letters of Request to Examine Witnesses from Court of Queen's
    Bench for Manitoba, Canada*,
    59 F.R.D. 625 (N.D. Cal. 1973)...........................................................32

*In re Letters Rogatory Issued by Dir. Of Inspection of Gov't of India*,
    385 F.2d 1017 (2d Cir. 1967) ...............................................................23, 31

*In re Toft*,
453 B.R. 186 (Bankr. S.D.N.Y) .......................................................................35

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)................................................................................passim

*Lancaster Factoring Company Limited v. Mangone*,
90 F.3d 38 (2d Cir. 1996) .......................................................................passim

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ..............................................................20, 21, 22

*Minatec Finance S.A.R.L. v. SI Group Inc.*,
2008 WL 388374 (N.D.N.Y. Aug. 18, 2008)......................................................31

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
551 U.S. 644 (2007)................................................................................34

*Nutritional Health Alliance v. Food & Drug Admin.*,
318 F.3d 92 (2d Cir. 2003) ......................................................................34

*Ridinger v. Dow Jones & Co., Inc.*,
651 F.3d 309 (2d Cir. 2011) ....................................................................33

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
376 F.3d 79 (2d Cir. 2004) .................................................................19, 20

*Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*,
423 F.3d 166 (2d Cir. 2005) ...............................................................23, 25

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
900 F.2d 522 (2d Cir. 1990) .....................................................................33

*United States v. Estate of Romani*,
523 U.S. 517 (1998)................................................................................34

## UNITED STATES STATUTES

11 U.S.C. § 101(23) ...........................................................................10, 25

11 U.S.C. § 109 (a) ...............................................................................35

28 U.S.C. § 157(b)(2)(A) .....................................................................10, 11

28 U.S.C. § 157(b)(2)(C) .................................................................11

28 U.S.C. § 157(b)(2)(E) .................................................................11

28 U.S.C. § 157(b)(2)(F) .................................................................11

28 U.S.C. § 157(b)(2)(H) .................................................................11

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1782 ......................................................................passim

Bankruptcy Act .............................................................................34

    § 304.......................................................................................35

Chapter 15 of the Bankruptcy Code......................................passim

## ISRAEL REGULATIONS AND STATUTES

Israel Companies Liquidation Regulations (1987) ......................7

Israeli Companies Law 5759-1999 (New Version) ......................7

    § 367.........................................................................................8

Israeli Companies Ordinance 5743-1983 (Consolidated Version)............7

    § 268..................................................................................8, 11

    § 269.........................................................................................8

    § 276.........................................................................................8

    § 288............................................................................8, 14, 15

    § 306.............................................................................8, 9, 11

    § 307.........................................................................................8

    § 307(a) ...................................................................................9

    § 307(A)(2) ...........................................................................10

    § 352.......................................................................................11

§ 355(a) .................................................................................................11

§ 373 ..............................................................................................passim

§ 374 ..............................................................................................passim

**OTHER AUTHORITIES**

S.Rep. No. 1580, 88th Cong., 2nd Sess. 2 (1964) *reprinted in* 1964
   U.S.C.C.A.N. 3782 ........................................................................10

British Companies Act .............................................................................27

## PRELIMINARY STATEMENT

This is an appeal by Alan Freedman a/k/a Alan Friedman ("Freedman"), LM Moore SP Investments (the "Moore Fund"), and Moore Capital Management, LLC ("Moore Capital ") (collectively, "Appellants") from Orders of the United States District Court (Hellerstein, J.), entered January 7, 2016, and February 5, 2016 (the "Orders," JA 249, 251),[1] and its decision of January 7, 2016, (JA 237), pursuant to 28 U.S.C. § 1782, granting the application of Appellee Guy Gissin (the "Liquidator"), solely in his capacity as court-appointed liquidator of Sybil Europe Public Co. Limited ("Sybil Europe") in an *ongoing* liquidation proceeding before the Israel District Court (the "Liquidation Proceeding"), to issue subpoenas to Appellants to obtain discovery for use in that ongoing, foreign Liquidation Proceeding.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Appellants moved for a stay pending appeal.  On February 25, 2016, the District Court found Appellants did not meet the requirements for a stay, but (i) temporarily and briefly stayed the Orders solely so Appellants could seek from this Court a stay pending appeal, and (ii) required Appellants to pursue an expedited appeal.  Doc. No. 38. Appellants moved this Court for a stay.   The Liquidator opposed a stay and requested the earliest possible argument.   App. Doc. Nos. 33, 43.  On March 9, 2016, a single

---

[1] "JA ___ " refers to the Joint Appendix.  "App. Br. __" refers to the Appellants' Brief on Appeal. "Doc. No. __" refers to items in the District Court record not in the Appendix.  "App. Doc. No. __" refers to documents in this Court's docket.

motion judge continued the stay, but on March 25, 2016, the Court denied the motion for a stay without prejudice to renewal at or after oral argument.  App. Docs. 40, 58.

## COUNTER-STATEMENT OF ISSUE FOR REVIEW

Whether, as this Court held in *Lancaster Factoring Company Limited v. Mangone,* 90 F.3d 38, 42 (2d Cir. 1996) ("*Lancaster*"), because an ongoing, foreign liquidation proceeding is adjudicative, a foreign liquidator may obtain discovery under 28 U.S.C. § 1782 for use in that ongoing proceeding, particularly when the foreign court authorized the § 1782 application.

## SUMMARY OF ARGUMENT

This case involves no new, novel factual or legal issues under § 1782, but rather an undisputed factual record and the straightforward application of this Court's twenty-year old, unequivocal holding in *Lancaster*, deciding the sole issue here in favor of the Liquidator's position: to wit, that because a foreign liquidation proceeding is adjudicative, obtaining discovery for use in that *ongoing* foreign bankruptcy proceeding is "for use" within the intended scope of § 1782.  *Accord, In re Application of Hill*, No. M19-117, 2005 WL 1330769, at *3 (S.D.N.Y. June 3, 2005) ("*Hill*").  Indeed, the Israel District Court has blessed the application.

The 1782 ship involving discovery for liquidators in *ongoing* foreign bankruptcy proceedings has long since sailed.  At oral argument below, Appellants did not challenge whether the Liquidation Proceeding is adjudicative and do not

challenge here that *Lancaster* is good law, that the Liquidation Proceeding is a foreign liquidation proceeding similar to the proceeding in *Lancaster,* or that the Liquidator has all the normal tools available "for use" of the discovery in the Liquidation Proceeding. That resolves the appeal. A liquidator in a foreign, adjudicative liquidation proceeding may conduct discovery of facts to see which tools in the liquidation toolbox to use to obtain adjudications in the ongoing proceeding. This is completely different from a potential litigant in a non-liquidation proceeding, who seeks information for some contemplated, but not yet existing proceeding.

Appellants have tried to complicate this case and obfuscate the real issue by making it only about whether there is a contemplated proceeding against them. This case is not about them or whether there are pending or contemplated claims against them. They are mere witnesses, who could just as easily be John Doe Bank. Rather, this case is about two simple questions: (1) is there an ongoing, adjudicative, foreign proceeding, whether or not it involves appellants; and (2) can the Liquidator, as an undisputed, interested party in that proceeding, employ the discovery "with some advantage to serve some use" in that proceeding. The answers to these questions are resoundingly yes.

First, as *Lancaster* held, there is no serious dispute that the very nature of any liquidation proceeding, like a bankruptcy case, is adjudicative, and the

unchallenged record here, as Appellants conceded, proves that this is the nature of any Israel liquidation proceeding and this *ongoing* Liquidation Proceeding.

Second, the Liquidator is not just some potential litigant. He is appointed by and a creature of the court, who functions solely in that capacity, and thus an "interested person" and central party to the Liquidation Proceeding to carry out its liquidation objective. He can use the traditional liquidation tools to apply the information *in the Liquidation Proceeding* "with some advantage," *inter alia,* to move the Israel District Court for orders that adjudicate the liquidation of the estate's creditor claims and its assets, including proceeding against any person or property to recover property, to judge liability for damages, and to order payment of funds.

The Appellants' entire brief denies reality in pretending that there is no ongoing Liquidation Proceeding. It misstates the nature of liquidation proceedings in general and under Israel law specifically. Appellants' argument that because the Liquidator had not yet sued them, he is only using the information for himself and not using it in a pending proceeding in Israel, is false and simply ignores the undisputed record here, the very existence of the Liquidation Proceeding and its nature, and the rights and duties of the Liquidator under Israel law.

Appellants' many theories, several abandoned on appeal, have sought to make something out of nothing with the singular, unfortunate result being injury to

the estate by delaying for six to nine months their § 1782 obligations in a lengthy process that § 1782 never contemplated, *Lancaster* should have foreclosed, and this Court should not tolerate.   This is an easy case, and this Court should affirm.

## STATEMENT OF FACTS

In the District Court, the Liquidator submitted two declarations.  Appellants did not contest them in any way or offer any facts of their own, except for the Liquidator's retainer agreement with counsel.  JA 147-55.

## 1.    Background of Sybil Europe and The Appellants

Sybil Europe is an entity organized under the laws of Cyprus that conducted business (i) in Israel, principally by raising capital from the public by issuing bonds in the Tel Aviv Stock Exchange Market; and (ii) by the promotion, development, acquisition, holding, and management of income-producing properties in Eastern and Central European countries.  JA 41, ¶ 3.  Sybil Europe has three principal shareholders:  Appellant Moore Fund (24%), Sybil Europe Ltd. ("Sybil Ltd") (73%), and Elleson Limited ("Elleson") (3%).  JA 44, ¶ 19.[2]

Appellant Moore Fund, an international investment fund operating mainly in the United States and Europe, is incorporated in the Bahamas and managed in New

---

[2] Sybil Ltd is a private company incorporated in Israel and owned by Pinhas Tsarfati ("Tsarfati"), an Israeli citizen, who served as a member of Sybil Europe's official board of directors (the "Official Board").  JA 44, ¶¶ 20-21.  Tsarfati also controlled Sybil International Consulting Ltd. ("Sybil Consulting"), which provided financial, accounting, and business services to Sybil Europe and its subsidiaries.  JA 44, ¶ 22.  Elleson is a foreign company controlled by Nadav Livni ("Livni").  JA 45, ¶ 26.

York through Appellant Moore Capital, a management company.  JA 44, ¶ 24.
Appellant Freedman is an employee of Moore Capital.  Although the Moore Fund
formally waived its right to appoint a director to the Official Board, Freedman
acted as the representative of the Moore Fund and appears to have been active in
the management of Sybil Europe's affairs.  JA 45, ¶ 25 [3]

2.    **The Liquidator Reports to The Israel District Court in An**
      ***Ongoing*** **Liquidation Proceeding Before That Court, Which**
      **Has The Power to Adjudicate Issues Relevant to Liquidation.**

At oral argument below, Appellants conceded:

> We are not talking about whether the bankruptcy proceeding in
> Israel is adjudicative or not.  That's not the issue.

JA 234.  The record fully supports this.

On October 28, 2010, the trustee of Sybil Europe's Series A bondholders
filed a liquidation petition with the District Court, Tel Aviv, Israel, commencing
the Liquidation Proceeding to liquidate Sybil Europe.  JA 41, ¶ 4.  On October 28,
2010, the District Court, Tel Aviv, issued a provisional liquidation order and
appointed Appellant Gissin provisional liquidator of Sybil Europe.  Pursuant to this
order, the provisional liquidator obtained the power "to seize, safeguard, insure and
insofar as necessary manage [Sybil Europe's] assets . . . ."  JA 41, ¶¶ 5-6.

---

[3]Appellants self-labeling as "Investors" does not change the undisputed record that they were
heavily involved in and knowledgeable about Sybil Europe and its operations and the facts that
any Liquidator needs to acquire.

On February 23, 2011, after publication and a public hearing, the District Court, Tel Aviv, issued an order appointing Gissin Special Administrator of Sybil Europe.  JA 42, ¶ 8.  On September 11, 2011, following a creditors' vote, the District Court, Tel Aviv, appointed Gissin as permanent Liquidator to liquidate Sybil Europe pursuant to the Israeli Companies Law 5759-1999 (New Version), and the Israeli Companies Ordinance (Consolidated Version) 5743-1983 (the "Liquidation Order").  JA 42, ¶ 8; JA 50-62 (Exs. 1 & 2).  The Liquidation Order included a Dissolution Order, commonly called a "winding up order," for the Liquidator to *realize* Sybil Europe's assets and to distribute to creditors according to priorities set by Israel law.  JA 42, ¶ 12.[4]

Pursuant to these orders, the Liquidator is a creature of the Israel Court and acts solely in that capacity.  Despite Appellants' protestations, the Liquidator's declarations below proved without challenge that the Liquidation Proceeding is (i) adjudicative, (ii) derived from English law, (iii) similar to a United States bankruptcy proceeding, and (iv)  similar to the liquidation proceedings recognized in *Lancaster* and *Hill*, at *3.   JA 182-85, ¶¶ 9-16.

First, pursuant to the Liquidation Order, Israel Companies Liquidation Regulations (1987), and the Israeli Companies Ordinance (consolidated Version)

---

[4] Tsarfati, the largest shareholder, in order to challenge the Liquidator's authority to act, then appealed the Liquidation Order.  On September 4, 2015, the Israel Supreme Court affirmed the Liquidation Order and the Liquidator's authority.  JA 182, ¶ 8.

5743-1983 (remaining in effect pursuant to Section 367 of the Israel v006302 Companies Law 5799-1999),[5] when the Liquidator took control, Sybil Europe's Board lost all powers, and the Liquidator had exclusive authority to act as the sole representative of Sybil Europe. He is in charge of all Sybil Europe's businesses and assets, including but not limited to claims, bank accounts, property, and the equity rights in all subsidiaries. JA 43, ¶¶ 14-15.

The Liquidator also has sole authority to manage and make decisions concerning Sybil Europe and to investigate the circumstances of its collapse. JA 42-43, ¶ 13. He may seize, collect, and value all estate assets, including legal claims that the company may assert;[6] determine the validity, value, and priority of claims by creditors; and liquidate and distribute assets and pay claims of creditors pursuant to Israel law. JA 43, ¶¶ 14-17; JA 182-85, ¶¶ 9-15 ; *see also* Companies Ordinance §§ 268, 269, 276, 305, 306, and 307.

Second, the Liquidator manages Sybil Europe's assets "under the supervision of the [Israel] court" and must report to and obtain authority from that Court for the actions he seeks to take. JA 180, ¶ 3. He also reports to the Official Receiver, a government official who oversees all liquidators. JA 183, ¶ 11, n.4.

---

[5] A complete English translation of the Israel Companies Ordinance is at: http://financeisrael.mof.gov.il/FinanceIsrael/Docs/En/legislation/CorporateGovernance/5743-1983_Companies_Ordinance.pdf.

[6] In upholding the Liquidation Order, the Israel Supreme Court stated that "there is no dispute that potential claims are an asset of the estate. JA 185, ¶15

The Liquidation Proceeding proceeds in two ways to achieve its goal of liquidating assets properly in the ongoing proceeding. First, the Liquidator gathers and analyzes facts. Second. he then presents motions to the Court to adjudicate.

The Liquidator has a variety of tools in the Liquidation Proceeding toolbox with which to use relevant evidence. These tools include the power "to take into [his] custody all property and choses of action; to identify, pursue and realize assets of the company; to receive, evaluate and adjudicate creditor claims; and to distribute assets to creditors." *Hill*, at *3; *see* Companies Ordinance § 306 (court may demand turnover of assets and liquidator may "bring and defend by his official designation any suit or other proceeding pertaining to [estate] assets, or which it is necessary to bring or to defend for the collection of the assets and the effective winding up of the company"); § 307(a) (may "bring and  . . . defend in the company's name any action or other legal proceeding"). JA 183, ¶ 12.

Further, the Liquidator may bring claims against any person in the *pending* Liquidation Proceeding itself by bringing a "Motion for Orders" under Sections 373 and 374 of the Israel Companies Ordinance to establish the liability of the wrongdoing parties. JA 185-88, ¶¶ 17-22.

In order to accomplish these ends, the Israel District Court presiding over the Liquidation Proceeding may hear and *adjudicate in the Liquidation Proceeding* the facts presented by the Liquidator or other interested persons, using all of the tools

available.  JA 183-84, ¶ 13.  Indeed, this may also include motions to abandon claims that are not supported by evidence.

The Liquidator explained specifically that the Companies Ordinance is similar to the United States bankruptcy scheme.  JA 42, ¶ 13; JA 183, ¶ 11.  In general terms, it provides a "comprehensive procedure for the orderly and equitable distribution of assets to all creditors," once the court adjudicates (i) to recover and value the debtor's estate," *Lancaster* at 42; (ii) who are the *bona fide* creditors; and (iii) what is the proper value and priority of each creditor claim and the distribution to each creditor.  *Hill* at *3.  It is "throughout a judicially-supervised procedure in which the liquidator . . . exercises both administrative and adjudicative powers." *Id.*

The Liquidator also explained specifically that the specific tools available in the Liquidation Proceeding toolbox share many attributes with "core" United States Bankruptcy proceedings[7] under 28 U.S.C § 157(b)(2)(A).  JA 184, ¶ 14. Section 307(A)(2) of the Companies Ordinance provides that the liquidator shall

---

[7] 11 U.S.C. §101(23) (foreign proceeding is " a collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court . . .").   Under Chapter 15, Congress has placed a high value on cooperating with foreign insolvency proceedings.  *In re ABC Learning Centres Ltd.,* 728 F.3d 301, 304-05 (3d Cir. 2013).

 Although reciprocity is not a requirement of § 1782, one of its central purposes is to encourage foreign judicial systems to grant similar tools to United States litigants.  *Lancaster,* 90 F.3d at 41 (relying on S.Rep. No. 1580, 88th Cong., 2nd Sess. 2 (1964) *reprinted in* 1964 U.S.C.C.A.N. 3782, 3783); *In re Application of Gianoli Aldunate,* 3 F.3d 54, 57-58 (2d Cir. 1993).

"manage the company's affairs, to the extent necessary for the expedient winding up" of the company.  Like § 157(b)(2)(A), "allowance or disallowance of claims against the estate," § 352 of the Companies Ordinance provides that an Israel liquidation proceeding involves the determination of bona fide claims by creditors, and determining the value and priority of each.  Like § 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the estate," § 306 of the Companies Ordinance provides that the liquidator may "bring or defend . . . any suit or other proceeding pertaining to [estate] assets, or which it is necessary to bring or to defend for the collection of the assets and the effective winding up of the company."  Section 306 also provides that the court may "make an order that all or part of a company's assets, even if held for it by trustees, shall be vested in the liquidator by his official designation," which mirrors § 157(b)(2)(E)'s provision for "orders to turn over property of the estate."  The Companies Ordinance also provides that an Israel liquidation proceeding includes proceedings involving preferences (§ 355(a)) and fraudulent conveyances (§ 268), which are similarly "core proceedings" under §§ 157(b)(2)(F) and (H).

Furthermore, these tools also specifically include §§ 373 and 374 of the Israel Companies Ordinance.  Section 373 provides that in the Liquidation Proceeding itself, the Israel District Court

- may hold a hearing on whether the company was run fraudulently;

11

- and if it was, may declare that any officer or person directing an officer who participated therein shall bear unlimited personal responsibility for all or part of the company's liabilities;

- at such hearing "shall" summon the liquidator and "may" summon the Official Receiver and any other person; and the Official Receiver shall submit his written opinion;

- may issue further instructions and direct that any liability on an officer be a lien, which it may enforce;

- may issue an order barring such persons from serving as officers or managers of a company;

Pursuant to § 374, the Israel District Court

- upon application of the Official Receiver, the liquidator or others, may investigate a person's behavior and order the return of money or assets or award the payment of money to compensate for his acts.

JA 186-88, ¶¶ 18-21.

Thus, as the Liquidator explained, the Liquidation Proceeding has numerous tools to make "use" of the information obtained from Appellants, similar to the foreign liquidation proceedings approved in *Lancaster* and *Hill*. JA 183-88, ¶¶ 12-20. Appellants did not challenge that these tools are available or that they share many attributes with "core" United States Bankruptcy proceedings.

## 3. The Discovery Is "For Use" in The Liquidation Proceeding.

Obviously, in deciding which tools to use in the Liquidation Proceeding to carry out this judicially-supervised liquidation scheme, the Liquidator begins with little information and incomplete documents. Doc. No. 35-1, ¶ 10. In order to

gather information to present to the court to obtain orders to adjudicate the relevant issues, the Liquidator has the explicit legal authority under Israel law to obtain all information necessary to effectuate the liquidation, including information possessed by Appellants relating to any relevant subjects, for example, (i) the operations of Sybil Europe and its subsidiaries and affiliates; (ii) the conduct of its shareholders, employees, creditors, and vendors and other relating to Sybil Europe and its subsidiaries; (iii) validity of claims by and against Sybil Europe and subsidiaries; and (iv) the existence and disposition of the Sybil Europe's assets worldwide, including in the United States. JA 43, ¶ 17. He may also question under oath anyone with relevant knowledge, particularly shareholders, directors, officers, and employees. JA 43-44, ¶ 11-12; Companies Ordinance § 288.

Appellants repeatedly and misleadingly attempt to turn this case into a question of claims against them and to question the Liquidator's proof on the merits of such claims.[8] App. Br. 11-12. But this is beside the point. As demonstrated above, the Liquidator has broad uses for the discovery in the Liquidation Proceeding, which includes but is not limited to pursuing claims against Appellants or *any person*. If he does determine that assets include claims

---

[8] Ignoring the record and without any support, Appellants repeat their misstatement below that the Liquidator only seeks discovery to bring claims against *them*. App. Br. at 9-11, 14, 19. They ignore the Liquidator's undisputed sworn statements that he is seeking discovery related to many other matters and to potential claims against others. JA 181-82, ¶ 7. They have abandoned, however, their reliance below on counsel's retainer agreement. JA 131-33.

to recover property or to make claims against *any person*, and these claims have sufficient value, he may bring a "Motion for Orders" *in the Liquidation Proceeding* under §§ 373 and 374.   JA 185-88, ¶ 17-21.

**4.      The Israel Court Expressly Directed and Approved This Discovery.**

In addition to the Liquidator being a creature of the Israel District Court, that Court also directed and approved this § 1782 application.

Pursuant to Israel Law, Companies Ordinance § 288, the Liquidator is authorized to obtain all documents from anyone in Israel and examine anyone under oath.  JA 43-44, ¶ 18.  While no American-style discovery exists in Israel to compel discovery from persons like Appellants, who are located *outside* of Israel, no rules of evidence preclude courts in Israel from accepting evidence gathered through discovery legally obtained in the United States.  JA 47, ¶¶ 38-40.

Prior to filing the Application, the Liquidator engaged in extensive efforts in the Liquidation Proceeding to obtain discovery from Appellants, who resisted and refused to cooperate at every step.  Indeed, Appellants' current counsel even tried to dissuade the Liquidator from seeking information from them in the United States, by the misleading assertion that a foreign liquidator has no right to seek information in the United States.  JA 189-91, ¶¶ 24-35; JA 194-215 (Exs. 8-13).

Significantly, on June 7, 2012, *at the direction of the Israel District Court,* a court-appointed examiner issued a summons to question Appellant Freedman

pursuant to Section 288, providing him a copy in Hebrew of that Court's decision appointing the examiner.   Freedman failed to appear.  JA 189, ¶ 25.

In 2015, after Freedman failed to appear before the examiner and after years of Appellants' refusal to cooperate, the Liquidator obtained an order from the Israel District Court to retain United States counsel specifically to commence this § 1782 application to obtain documents and testimony from Appellants for use in the Liquidation Proceeding.  JA 191-92, ¶¶  36-37.

### 5. Appellants Possess Information Vital to The Israel Court and The Liquidator.

Despite the Appellants' protestations, the Liquidator is not only determining possible claims against them, but is fulfilling his duties (i) to determine and report what happened, the location and value of estate assets, claims against others, and whether he can recover assets; and (ii) to seek adjudications in the Liquidation Proceeding to recover, liquidate, and distribute on claims.  Based on the following undisputed facts, Appellants have a wealth of information vital to the Estate concerning these issues.

**Transactions with Sybil Europe and its Affiliates**.  Appellant Moore Fund entered into several transactions with Sybil Europe and its affiliates.  On April 3, 2006, prior to Sybil Europe becoming a Cyprus company and issuing any bonds, the Moore Fund and Sybil Europe contracted for a $10.4 million convertible loan to Sybil Europe, which pledged its holdings in several subsidiaries as collateral.

15

JA 45, ¶ 27.  In December 2006, the Moore Fund converted this loan into equity and executed an investment agreement governing investments in Sybil Europe, pursuant to which the Moore Fund (i) reserved the right (x) to consult with and give advice to Sybil Europe concerning business matters and day-to-day operations, and (y) to receive performance reports from Sybil Europe management; and (ii) obtained the right to appoint a director to the Official Board.  JA 45, ¶ 28. In January 2009, the Moore Fund extended a EUR 10 million loan to Valuestar Trading Limited ("Valuestar"), a second tier subsidiary of Sybil Europe.  This loan grew to approximately EUR 20 million.  JA 45, ¶ 32.  On October 21, 2010, shortly before the Moore Fund initiated liquidation proceedings against Valuestar, the Moore Fund, Valuestar, Sybil Europe, and Tsarfati executed an investment termination agreement, pursuant to which the Moore Fund renounced its status as Sybil Europe shareholder.  JA 46, ¶ 33.  In November of 2010, Valuestar executed an acknowledgment of indebtedness and a declaration of insolvency, possibly at Freedman's request, after which the Moore Fund began liquidation proceedings against Valuestar in Cyprus.    JA 47, ¶ 34.

**Unofficial Board of Sybil Europe.**  Information reviewed to date indicates that Freedman, Tsarfati, and Livni acted as a de facto board of directors of Sybil Europe (the "Unofficial Board"), and the Official Board was merely a rubber stamp.  JA 47,  ¶ 35.  Freedman's participation on the Unofficial Board gave him

16

vital information about (i) the company's operations; (ii) its dealings and relationships with Appellants; and (iii) the extent and nature of the involvement of the Appellants, Tsarfati, and Livni (and entities owned or controlled by, or affiliated with them) in the affairs and management of Sybil Europe, Sybil Ltd, and Sybil Consulting (and entities owned, controlled, or affiliated with them), including but not limited to their approval of financial statements; hiring of employees; the management of any of these entities or of properties owned by any of them; and the assumption of loans in the name of any of them.  JA 45-46, ¶ 29 Such information is relevant and "for use," because it enables adjudication of what happened to the debtor's assets, whether there was preferential treatment by or for the benefit of shareholders, or fraudulent or improper conduct that has sufficient value to bring motions in the Liquidation Proceeding to adjudicate and liquidate tangible and intangible assets and claims that will bring value to the estate and enable the maximum and proper distribution to creditors.  JA 48, ¶¶ 42-43.

6.     **The District Court's Decision**

On January 7, 2016, the District Court dictated its decision from the bench and entered an order.  JA 237-41; JA 249.[9]  It found that pursuant to *Lancaster,* the

---

[9] That decision and order constitute the District Court's findings of fact and conclusions of law and are the exclusive judicial acts for review.  Oddly and improperly, Appellants cite colloquy between the District Court and Appellee's counsel during argument on the motion for stay to insinuate that the District Court's had doubts about its decision.  App. Br. 8.  Such colloquy or deliberations are not reviewable judicial acts and are neither probative nor relevant.

Liquidation Proceeding was a foreign, adjudicative tribunal regardless of whether the Liquidator exercises his option to acquire whatever claims he may find. JA 238. It concluded:

> In this case the liquidator charged with the responsibility to marshal the assets and liquidate the claims of the trustee [liquidator] and of the company which the trustee [liquidator] wanted to take discovery from people who were involved in lending money and becoming owners and engaging in ancillary transactions with respect to the company of which Mr. Gissin is the liquidator.
>
> [Appellants] are all parties that potentially have useful information, useful to the liquidator to analyze and discover to see if there are claims that should be adjudicated or not; and if there are to proceed directly to liquidate those claims. That is part of the adjudicative functions that go on in a liquidation and make this a case that falls squarely under *Mangone* [*Lancaster*] rather than the other two cases.

JA 241. The Court also observed:

> At the end of the bankruptcy proceeding is an order that adjudicates various claims, settles an estate and passes on whatever is left to creditors. There's adjudication at every step. JA 234.
>
> The liquidator has got the job of marshaling all the assets and getting an estate that he can distribute. And every aspect of that requires an adjudication which is subject to court approval. JA 235.

On February 5, 2016, the District Court so-ordered the parties' stipulation as to the timing and scope of discovery. JA 251. On February 25, 2016, it denied Appellants' motion for a stay pending appeal. Doc. No. 38.

## ARGUMENT

**I. THE USE OF DISCOVERY FOR THE *ONGOING* LIQUIDATION PROCEEDING IN ISRAEL CONSTITUTES USE IN A PENDING FOREIGN PROCEEDING UNDER § 1782.**

### A. The Legal Standards Applicable to § 1782 Ensure Broad Applicability.

Section 1782 grants broad power to assist persons in foreign proceedings to obtain evidence for use in those proceedings. A district court may order a person

> . . . to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing produced, before a person appointed by the court. . . .

While an applicant must meet three statutory tests, *Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 80 (2d Cir. 2012), on appeal Appellants challenge only whether the discovery is "for use" in a foreign proceeding.[10] While normally there are then four discretionary factors, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004), Appellants no longer contest any of the discretionary factors.[11]

---

[10] Appellants did not dispute below that they can be found in New York City or that the Liquidator is an "interested person."

[11] Appellants' state that the District Court did not reach their discretionary arguments, App. Br. 7, but they have abandoned the only two discretionary points they raised below. First, they

19

Discretion "is not boundless," but must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz*, 376 F.3d at 84 (internal quotations and citation omitted); *see also Mees v. Buiter*, 793 F.3d 291, 298-99 (2d Cir. 2015). In light of these goals, "the statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn,* 673 F.3d at 80. This Court recently emphasized this broad application in overturning as abuse of discretion the denial of a § 1782 application based on a too-narrow interpretation of the statutory and discretionary factors. *Mees*, 793 F.3d at 301-04.[12]

First, while § 1782 does require an ongoing foreign proceeding, *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 1095, 1099-1100 (2d Cir. 1998), contrary to Appellants' suggestion, it does not require an adversary suit *against* the witness or anyone, but only *some adjudicatory* "proceeding in a foreign or international

---

argued that although they are *not* parties in Israel, the District Court should analyze the Application as if they were and then should deny the Application, because one of the § 1782 discretionary factors weighs against discovery if the witness target of discovery is a party to the foreign proceeding. JA 142-47. That Appellants have abandoned this contradictory and incomprehensible argument is understandable, because they were never parties in the Liquidation Proceeding. Second, the scope and timing of discovery are no longer in dispute, because Appellants stipulated to these points in the February 5, 2016, Order. JA 251.

[12] The liberality of § 1782 is further supported by the fact that the statute does not require that discovery be available in the foreign proceeding. *Intel*, 542 U.S. at 260; *Mees*, 793 F.3d at 303 (quotations and citations omitted), or that the evidence even be admissible in the foreign proceeding. *Brandi-Dohrn,* 673 F.3d at 82.

tribunal" or that such a proceeding be "in reasonable contemplation." *Intel Corp.* 542 U.S. at 243; *Mees,* 793 F.3d at 299.

Nor could § 1782 *require* an adversary suit against the witness, since the first *Intel* discretionary factor weighs against discovery if the witness is already a party to the foreign proceeding. There would be no reason for such a discretionary factor if being a party was a requirement. Further, such a requirement makes no logical sense, because foreign applicants frequently need and seek evidence from mere witnesses who are not opposing parties.

As this Court has observed, *Intel* instructs just how liberal is the notion of "proceeding." After approving an expansive definition of "interested party," *Intel* also upheld a request "for use" of information before an administrative official, whose charge was only to conduct a preliminary investigation to decide whether to initiate a complaint. *Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 119 (2d Cir. 2015) ("*Fortress*") (citing *Intel, 542 U.S.* at 256-57).

The Liquidation Proceeding is no less a qualified proceeding. The Israel District Court is a court with general jurisdiction to adjudicate in the first instance any matter not within the sole jurisdiction of another court. JA 47, ¶ 38. Such a court is precisely the type of first instance decision-maker that constitutes a

"foreign or international tribunal" within the meaning of §1782. *See Intel*, 542 U.S. at 258.[13]

Second, "for use" is also a liberal term. As this Court has observed, by adopting the term "for use," Congress only "meant to require that §1782 applicants show that the evidence is 'something that will be employed with some advantage to serve some use in the proceeding.'" *Fortress*, 798 F.3d at 120 (quoting *Mees*, 793 F.3d at 297). Given all the tools in the Liquidation Proceeding toolbox, the information sought will be to "some advantage" in the Liquidation Proceeding.

## B. The District Court Correctly Held that the Liquidator Will Use The Information in an Ongoing, Adjudicative, Liquidation Proceeding, and This Is Not a Contemplated Proceeding.

Below, Appellants tried to distinguish *Lancaster* by contending (i) that it involved an investigation into recovering an "existing," to wit, tangible asset, like money, which discovery "may be available" under § 1782, JA 139-40, while (ii) here there is no pending proceeding but only a contemplated proceeding, because, they claim, the Liquidator is pursuing only an intangible asset, to wit, a possible chose in action against them. JA 138-41.[14] They have been forced to abandon this

---

[13] Indeed, of all foreign proceedings, a liquidation proceeding should be among the highest on the list that § 1782 should favor, because of a strong Congressional policy to assist such foreign proceedings and encourage international cooperation. *See In re Barnet*, 737 F.3d 238, 250-51 (2d Cir. 2013).

[14] In fact, this is not true, because *Lancaster* was not so limited to finding a tangible asset, but rather was just like this case. While it is true that *Lancaster* involved missing money, the petition also sought information, because "there may be a basis to assert very substantial claims

frivolous argument, because foreign and United States courts have long held it axiomatic that intangible, legal claims are assets of the estate. *See, e.g.*, *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 175 (2d Cir. 2005). This is also true in Israel. JA 43, ¶ 16; JA 184-85, ¶ 15.

On appeal, while avoiding any express references to this non-distinction between tangible property and a non-tangible, legal chose in action, Appellants still argue the Liquidator is searching for a "claim," which is the same argument in a disguised form. They contend the Liquidator does not seek discovery for use in a foreign proceeding, because (i) there is no adversarial proceeding in Israel against them or others; and (ii) the Liquidator is still, merely investigating whether *he* has grounds to act against them or others. They argue, therefore, that (i) this makes the application only "for use" by the Liquidator and not "for use" in a pending proceeding, thus running afoul of *In re Letters Rogatory Issued by Dir. Of Inspection of Gov't of India*, 385 F.2d 1017, 1019, 1021-22 (2d Cir. 1967) ("*In re Indian Letters Rogatory*"); and (ii) thus this is only a "contemplated proceeding" case, with additional burdens the Liquidator did not meet. App. Br. 11-17. The

---

against Mr. Nahum [not the target] for conspiracy and aiding and abetting . . . to wrongfully divert substantial sums of money away from the debtor. . . ." 90 F.3d at 40

District Court examined carefully Appellants' arguments and correctly rejected them on the facts and on the law. JA 237-41.

### 1. The Liquidator's Proposed Use Is in The Adjudicative Liquidation Proceeding.

Appellants' attempt to separate the Liquidator from the Liquidation Proceeding fails, because the Liquidator is not using the discovery for his own use but to obtain adjudications in a proceeding they did not dispute is adjudicative. JA 234 (adjudicative is "not the issue"). It is irrelevant that *the Liquidator* first examines the facts in order to value litigation assets, report to the Israel District Court, and then bring further motions to adjudicate in the Liquidation Proceeding. This is a typical, familiar path and tool of a foreign liquidator or U.S. trustee in such liquidation proceedings. United States courts are familiar with this process.

Even without Appellants' concession, JA 234, the role of the Liquidator does not change the fact that the Liquidator acts within the ongoing Liquidation Proceeding, whose inherent nature, like any U.S. bankruptcy case, is to adjudicate a myriad of relevant issues.[15] Bankruptcy law 101 teaches that a bankruptcy proceeding "by its nature, is one in which the value of the debtor's estate is adjudicated," and by its nature falls "within the intended scope of § 1782." *Hill* at

---

[15] Nor does it change the fact that the Israel District Court authorized this specific application.

*3 (S.D.N.Y. June 3, 2005) (citing *Lancaster,* 90 F.3d at 42).[16] Beyond the inherent nature of a bankruptcy proceeding, the record amply demonstrates this nature in this case.

The District Court noted that the Liquidation Proceeding involves "adjudication at every step," JA 234, and that the Liquidator's job is "marshaling all the assets and getting an estate that he can distribute. And every aspect of that requires an adjudication which is subject to court approval." JA 235. The District Court then held that the Israel Liquidation Proceeding *itself* is an existing adjudicatory proceeding that qualifies under § 1782, because it seeks to recover, value, liquidate, and distribute assets and value and determine claims against the Estate,[17] and the Liquidator's use of the discovery in the Liquidation Proceeding in a variety of ways is sufficient, without an existing suit against Appellants or anyone else. JA 237-38, 241.

The District Court correctly held that the two leading cases involving similar foreign bankruptcy proceedings, *Lancaster* and *Hill,* have expressly rejected the very arguments that Appellants advance here. In *Lancaster,* this Court held that a foreign liquidation proceeding in Milan was sufficiently adjudicative to constitute

---

[16] Indeed, Chapter 15 of the Bankruptcy Code defines a foreign liquidation proceeding "as proceedings in which 'the assets and affairs of the debtor are subject to control or supervision by a foreign court.' 11 U.S.C. § 101(23)." *In re Barnet*, 737 F.3d at 247.

[17] It is axiomatic that legal claims are assets of an estate. *See, e.g.*, *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d at 175; *accord Hill*, at *4-5.

a § 1782 proceeding, where, as here, that proceeding included a liquidator's investigation into the location and existence of assets of the debtor and the existence and substance of claims for and against the debtor, and "the value of the debtor's estate is adjudicated." *Hill* at *3. In reaching this conclusion, *Lancaster* expressly rejected Appellants' central argument that a proceeding is not "pending" in the case of a foreign liquidation if the foreign liquidator has not yet brought an adversary-type action, i.e., it "may or may not exercise its option to acquire whatever claims it may find and may or may not decide to commence a proceeding to pursue those claims," holding that "regardless of what may happen in the future, there is already a proceeding pending, to wit, the bankruptcy proceeding in Milan." *Lancaster*, 90 F.3d at 42.

This is precisely the situation here. The Liquidator has to use discovery to compile facts to exercise all of his duties, including but not limited to acquiring and determining the value of litigation assets. *See In re Application of Gianoli Aldunate*, 3 F.3d at 62 (compiling inventory for existing competency hearing). Appellants simply ignore the central holding of *Lancaster*.

*Hill* applied *Lancaster* to a similar Hong Kong liquidation proceeding with the same result, explaining that a *trustee's/liquidator's* investigation into the location and existence of assets of the debtor and the existence and substance of claims for and against the debtor, establishes that "the value of the debtor's estate

26

is adjudicated." *Hill* at *3. As is true here, the witnesses there had engaged in extensive communications regarding the companies and possessed information critical to their financial condition. The *Hill* liquidators sought financial information to close "gaps in the liquidators' knowledge of the affairs of the [debtors]", because of specific, highly unusual pre-petition transactions requiring "investigation" and the refusal of former officers and others to provide meaningful assistance, which the Hong Kong court had found would help the liquidators carry out their duties. *Id.* at *1-2.[18]

As the Liquidator's undisputed declarations explain, his powers and duties are nearly identical to those of the Hong Kong liquidator in *Hill*. JA 182-85, ¶¶ 9-16; *supra* at 10. The Liquidation Proceeding here is similar to core U.S. bankruptcy proceedings and the foreign proceedings in *Lancaster* and *Hill*, because it provides a "comprehensive procedure for the orderly and equitable distribution of assets to all creditors," *Hill* at *3; adjudicates "the value of the debtor's estate," *Lancaster* at *42; and determines the *bona fide* creditors and the proper value and priority of each creditor claim. *Hill* at *3. The Liquidator similarly seeks to

---

[18] *Hill* noted that Hong Kong's winding-up law was derived from the British Companies Act and "strikingly similar" to the U.S. Bankruptcy Code, in that it (i) provides for a comprehensive procedure for the orderly and equitable distribution of assets to all creditors; (ii) is a thoroughly judicially-supervised procedure; (iii) employs a court-appointed liquidator to exercise administrative and adjudicative powers, which include (w) taking into custody all property and choses of action; (x) identifying, pursuing, and realizing assets of the company; (y) receiving, evaluating, and adjudicating creditor s claims; and (z) distributing assets to creditors. *Id.* at *3.

determine the identity and location of Sybil Europe's assets, including legal claims. JA 42-43, 48, ¶¶ 13, 16-17, 41. Thus, "the liquidator . . . exercises both administrative and adjudicative powers." *Hill* *3; JA 182-83 ¶¶ 9, 11-14. The Liquidator has the power "to take into their custody all property and choses of action; to identify, pursue and realize assets of the company; to receive, evaluate and adjudicate creditor claims; and to distribute assets to creditors."

It is not correct that to pursue claims against Appellants or other person, the Liquidator will have to commence a new proceeding. Appellants did not challenge below that the Liquidator may bring claims against Appellants or others in the *pending* Liquidation Proceeding itself, *inter alia,* by bringing a "Motion for Orders" under §§ 373 and 374 of the Israel Companies Ordinance to establish the liability of the wrongdoing parties. JA 185-88, ¶¶ 17-22. The Court may hear and *adjudicate in the liquidation proceeding* the facts presented by the Liquidator or other interested persons using all the familiar tools that are similar to the United States bankruptcy code and the proceedings in *Lancaster* and *Hill*.

Having found that the Hong Kong proceeding was an adjudicative § 1782 proceeding, *Hill* rejected the same argument made by Appellants, to wit, that the foreign proceeding was not itself adjudicative and that a liquidator's search for facts was not "for use," just because the liquidator *might* pursue tort claims against the witness or others in a "separate proceeding." *Id.* at *4:

28

> Whether the Liquidators are able to assert third party tort claims directly in the present proceeding or would be required to institute an ancillary proceeding does not appear determinative as to the adjudicatory nature of the liquidation proceeding. Even if, as Ernst & Young USA asserts, some claims are properly asserted in a separate litigation, it appears that the object of the proceeding is generally to "receive, evaluate and adjudicate creditor claims." [affidavit cites omitted]. Moreover, there is no indication that the proceeding serves merely to enforce prior judgments (as in *Euromepa*) or will not involve the resolution of competing creditors' claims and a determination of the value of the debtors' estates.

It is entirely appropriate for a liquidator use the discovery to determine whether he possesses claims to assert against other parties. *Hill*, at \*4-5 (do not deny the application, just because the liquidator is "brazenly trawling for information to determine whether any claims [against third parties] exist").

This Court's recent decision in *Fortress* supports this conclusion. *Fortress* involved (i) Cayman Island "proceedings to liquidate" a Cayman Island holding corporation, and (ii) a Bahrain "proceeding to liquidate" assets, where each proceeding had trustees. 798 F.3d at 115. While this Court denied a *creditor's* application to obtain discovery that *the creditor* wanted to use in these and other proceedings, it did so solely because that particular creditor had no standing in that foreign proceeding and thus had no means of introducing the discovery therein. It also observed, 798 F.3d at 122, that the information sought

> might be helpful to the trustees in the liquidation proceedings in determining the proper distribution of the conglomerates' assets. To that end, however, there is nothing preventing the

29

trustees . . . from seeking discovery in U.S. courts pursuant to § 1782.

Thus, under *Lancaster,* it is enough that the applicant can make use of the discovery in an *ongoing* foreign liquidation proceeding that is adjudicative. A liquidator in a foreign, adjudicative liquidation proceeding may conduct discovery of facts to see which tools in the liquidation toolbox to use to obtain adjudications in the ongoing proceeding. This is completely different from a potential litigant in a non-liquidation proceeding, who seeks information for some contemplated, but not yet existing proceeding. Thus, the central and only questions must be (i) is the Liquidation Proceeding adjudicative; (ii) is the Liquidator able to use the discovery "with some advantage" within the proceeding. The clear answers here are yes.

### 2. Appellants' Cases Do Not Make This a Contemplated Proceeding Case.

Appellants' remaining arguments to support their paradigm that this is only a speculative "contemplated proceeding" case with insufficient proof of the Liquidator's intent to bring an adversary case, are without merit for several reasons.

First, Appellants' cases do not support their argument. *In re Indian Letters Rogatory* long preceded *Intel,* and Appellants do not cite any cases applying it to disqualify a foreign proceeding. In any event, it is inapposite, because it did not in the slightest involve a proceeding like the Liquidation Proceeding, which is a

separate, adjudicative proceeding with a court appointed officer bringing claims that would be adjudicated by an independent judicial authority. Rather, while noting that the legislative history reflected an intention to expand § 1782 to include "a foreign administrative tribunal or quasi-judicial agency as in proceedings before a conventional foreign court," *id.*, 385 F.2d at 1019, this Court held that an executive branch tax officer in India, who hears evidence and makes a tax assessment, which the taxpayer can appeal to an assistant commissioner and then to an appellate tribunal, was like an IRS employee and not like a tribunal. He had the sole responsibility for both making and evaluating the government's argument. Under India law, despite the duty to act fairly and being able to swear witnesses, the tax officer was not acting as a judge deciding a litigation between parties and did not impress the proceeding with such an attribute, where there "is the absence of any degree of separation between the prosecutorial and adjudicative functions." *Id.* at 1021.

Decisions subsequent to *In re Indian Letters Rogatory* recognize these distinctions. *Cf. Esses v. Hanania,* 101 F.3d 873, 876 (2d Cir. 1996) (application for discovery by applicant to use to have Hong Kong proceeding appoint him administrator of estate); *Lancaster,* 90 F.3d at 41; *Minatec Finance S.A.R.L. v. SI Group Inc.,* 2008 WL 388374, *5 and n.10 (N.D.N.Y. Aug. 18, 2008) (application involving German administrative tax audit, finding *In re Indian Letters Rogatory*

distinguishable in light of *Intel*); *see In re Letters of Request to Examine Witnesses from Court of Queen's Bench for Manitoba, Canada,* 59 F.R.D. 625 (N.D. Cal. 1973) (public inquiry commission not a tribunal).

Appellants argue that *Fortress* holds that such foreign liquidation proceedings do not satisfy § 1782, but this is plainly fallacious, because, as the District Court held, *Fortress* denied the application solely on the ground that the creditors had no standing, and suggested that the liquidator in those proceedings would have satisfied § 1782. JA 239-41. *Fortress*, 798 F.3d at 122.

Finally, Appellants attempt to rely on *Euromepa S.A. v. Esmerian, Inc.* to distinguish *Lancaster* and *Hill* by contending that at this time the Liquidation Proceeding is not adjudicating anything. The District Court correctly rejected *Euromepa* as inapposite for the simple reason that it merely involved an attempt *to reopen* a closed bankruptcy proceeding for the purpose of enforcing a judgment *after the proceeding was closed*, unlike here, where the proceeding is *ongoing*. JA 238.

Second, the fact that the Israel District Court (i) directed examination of Freedman and (ii) expressly authorized this § 1782 application, JA 189, ¶ 25, JA 191-92, ¶¶ 36-37, reinforces the District Court's conclusion that the adjudicative nature of the Liquidation Proceeding, the role of the Liquidator and the Israel

32

District Court, and the holdings of *Lancaster, Hill,* and *Fortress* dispose of their arguments.

## II. APPELLANTS' NEW ARGUMENTS ARE UNTIMELY AND WITHOUT MERIT.

### A. Chapter 15 of the Bankruptcy Code Does Not Repeal § 1782.

For the first time, Appellants contend that enacting Chapter 15 of the Bankruptcy Code to assist foreign representatives in foreign bankruptcy proceedings *sub silentio* repealed § 1782 as to foreign liquidation proceedings and "channeled requests for [discovery] relief through the bankruptcy system." App. Br. 20. This view is inconsistent with this Court's recognition in *In re Barnet*, 737 F.3d at 251, which Appellants fail to cite, that Chapter 15 and § 1782 co-exist. Appellants' argument fails for several reasons.

First, Appellants did not present this argument to the District Court. Absent manifest injustice not present here, this Court will not consider on appeal arguments not raised below. *Ridinger v. Dow Jones & Co., Inc.*, 651 F.3d 309, 317 (2d Cir. 2011); *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 527-28 (2d Cir. 1990). It should not do so here.

Second, Chapter 15 did not repeal § 1782. Appellants ignore the well-established principle that amendments or repeal by implication "are not favored" and will not be inferred unless the later statute "expressly contradicts" or is in "irreconcilable conflict" with the earlier statute, and such a construction "is

33

absolutely necessary in order that the words of the later statute shall have any meaning at all." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662-63 (2007) (internal quotations omitted). Because Appellants do not identify, and there are no, express or irreconcilable conflicts between Chapter 15 and the earlier § 1782, they do not meet this test.

Nor do Appellants' cases meet this test or support repeal, since each involved a conflict between an earlier, more general statute, and a later, more specific statute. In contrast, § 1782 is an earlier, more specific statute, and Chapter 15 is a later, more general one. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143-44 (2000) (later specific statute on FDA lack of authority to regulate tobacco versus earlier, more general statute that gave it authority); *United States v. Estate of Romani*, 523 U.S. 517, 531-32 (1998) (later comprehensive statutes regarding the treatment of government claims versus earlier statute predating Bankruptcy Act and Code); *Nutritional Health Alliance v. Food & Drug Admin.*, 318 F.3d 92, 102-04 (2d Cir. 2003) (later comprehensive statute for regulating labeling potentially poisonous products precluding earlier FDA interpretation).

There is nothing in the language of Chapter 15 nor a single word in its legislative history that provides that Chapter 15 repeals § 1782 as to interested persons who are foreign liquidators. This is for good reason. Chapter 15 has

important elements that demonstrate that it and § 1782 should co-exist. In this Circuit, 11 U.S.C. § 109 (a) applies to Chapter 15 and requires that a Chapter 15 applicant have a United States presence or property. *In re Barnet*, 737 F.3d at 247. Given that many foreign liquidators have a *bona fide* need for information in the United States, but either (i) have no such U.S. presence or (ii) or have no need to, or cannot financially, undertake a full-blown recognition proceeding, there is no compelling reason to preclude them from taking advantage of § 1782, just like any other foreign, interested person. As this Court explained, *id.,* 737 F.3d at 251:

> Here, 28 U.S.C. § 1782(a) provides for discovery in aid of foreign proceedings without any requirement akin to Section 109(a). Congress, therefore, may have intended to limit the relief provided by Chapter 15 because it knew that additional relief was already available outside of Chapter 15.

Others court have recognized this. *In re Toft,* 453 B.R. 186, 191 n. 5 (Bankr. S.D.N.Y) (Gropper, J.); *see In re Hughes*, 281 B.R. 224, 229-30 (Bankr. S.D.N.Y. 2002) (§ 1782 not inconsistent with Section 304, the predecessor to Chapter 15).

## B. The Liquidator's Statements Do Not Affect His Entitlement to The Discovery.

Appellants contend that the Liquidator's statements, some made in briefs and argument in opposition to Appellants' motion for a stay, require a reversal or remand, because they demonstrate the Liquidator did not mean what he declared under oath, to wit, that he intended to use the information in the Liquidation Proceeding, but that this was a pretext to use it elsewhere. As they have done

throughout their brief, Appellants (i) ignore the Liquidation Proceeding itself; and (ii) distort and cherry pick words and sentences in the Liquidator's papers to falsely suggest that the Liquidator's two extensive and detailed declarations – unchallenged below – are pretextual and untrue and do not accurately describe (a) the Liquidation Proceeding, or (b) the Liquidator's actual intent to use the discovery in that proceeding. Rather, they now claim, the Liquidator intends to use this information to sue *them elsewhere*, rather than using the information for a variety of purposes in Israel in the Liquidation Proceeding. App. Br. 21-25. For numerous reasons, there is no merit to these arguments.

Appellants rely on three items: (i) the Liquidator's December 30, 2015, reply declaration in support of the application, JA 189; (ii) the Liquidator's declaration in the District Court opposing a stay, App. Doc. No. 33 at 73 (Doc. No. 35-1); and (iii) the Liquidator's declaration in this Court opposing a stay. App. Doc. No. 33 at 94. *See* App. Br. 22-23.[19]

First, at no time did Appellants raise before the District Court that any of the Liquidator's statements were a grounds for reconsidering the Court's decision to grant the application. In particular, in the District Court they did not raise the

---

[19] On February 11, 2016, Appellants moved the District Court for a stay. Doc. No. 32. On February 17, 2016, the Liquidator filed a declaration of the Liquidator and a memorandum in opposition. Doc. No. 35. On February 25, 2016, the District Court ruled. Doc. No. 38. On Mach 1, 2016, Appellants moved this Court for a stay. App. Doc. No. 20. On March 4, 2016, the Liquidator opposed. App. Doc. No. 33.

Liquidator's District Court statements, even on February 25, 2016, at the argument on the motion for a stay, and they did not do so after the argument when they had more time to consider. Appellants' belated, last minute reliance on statements known to them cannot be raised for the first time on appeal to fill gaps left by other arguments abandoned on appeal.[20]

Second, Appellants argue that each of three statements on which they rely reflects the Liquidator's "true" intention to use the discovery in a proceeding outside of Israel. This is simply untrue. There is nothing in these statements that contradicts or undermines the Liquidator's repeated statements that he seeks the information for a variety of uses in the Liquidation Proceeding or that *if* he decides to file claims he will attempt to do so in the Liquidation Proceeding.

As to the first example, the December 25, 2015, Declaration, JA 189, Appellants state, App. Br. 23:

> . . . on top of his prior admission that, far from being able to sue the Investors in Israel, he is unable even to compel discovery from them there because the Investors "are not resident or citizens of Israel at this time."

But that statement of the Liquidator that he cannot use an Israel court to *compel discovery from a witness* in the United States is not an admission that the Israel court has no jurisdiction over *claims against Appellants* based on their conduct in or affecting Israel, or that contradicts his declarations that he intends to bring such

---

[20]While each of these grounds is frivolous, if Appellants believe they have grounds for relief, any remedy lies with Fed.R.Civ.P. 60 (b).

claims, if any, in the Liquidation Proceeding. They offer no legal support for their assertion, because there is none. To the extent Appellants conducted business in Israel concerning Sybil Europe, *inter alia,* by controlling or participating in its Unofficial Board or otherwise, there is nothing in the record and no reason to believe that if the Liquidator sues them in Liquidation Proceeding, that Court will not have jurisdiction over them.

The Liquidator's other statements opposing a stay are consistent and merely repeat that he is focused on bringing this information to, and using it in, the Liquidation Proceeding, and he *never* says that he intends to bring a case against anyone in Cyprus or New York, let alone that he will do so there exclusively. The Liquidator's appellate declaration in opposition to a stay states:

- It is highly likely he would have to investigate further to obtain information from other parties based on the leads from Appellants. App. Doc. No. 33, ¶ 5.

- "Some of the potential claims are in Israel and others *may be* in Cyprus. Some claims *may also* have to proceed in New York, *if* I cannot obtain jurisdiction in Israel over New York Parties. While I believe *there is jurisdiction in Israel over relevant parties*, this has not yet been determined, and I can expect there will be litigation by such parties, if and when I bring such claims. App. Doc. No. 33, ¶ 6 (emph. added).

His appellate memorandum in opposition to a stay, App. Doc. 33 at 12, says only that the information sought

38

is critical to the pursuit of matters relating to Cyprus, which had to wait for the final decision of the Israel Supreme Court. [Doc. No 35-1] Ex. 2 ¶¶ 15-20.

Because many of the actions at issue occurred in 2009-10, the Liquidator's ability and time left to proceed could be circumscribed by applicable statute of limitations in Israel and New York. App. Doc. No. 33 ¶¶ 7-14.

The Liquidator's District Court declaration in opposition a stay (i) repeats all of the reasons he needs this information in the Liquidation Proceeding (which are not limited to bringing adversary type claims) and his right to obtain evidence pursuant to Section 288 of the Israel Companies Ordinance, Doc. No. 35-1, ¶¶ 3-17; (ii) states that certain agreements have a Cyprus forum selection clause, which *might* require him to file something in Cyprus and that information obtained would assist "concerning any Cyprus action. Doc. No. 35-1, ¶¶ 18-20; but (iii) reiterates that he is "serving the Israel District Court, and I report to the Official Receiver" and that he is working for the "equitable recovery and distribution of the assets of the Estate . . . which is under the supervision of the Israel District Court and the Official Receiver." Doc. No. 35-1, ¶ 21.

Third, Appellants' newly discovered argument is simply a continuation of their myopic focus on a suit against them, which we have established is not controlling: (i) the Liquidator has many other reasons to employ the discovery "with some advantage to serve some use" in the Liquidation Proceeding beyond suits against Appellants or others; (ii) as long as the Liquidation Proceeding is

39

pending and the discovery can be used therein for "some advantage," *Lancaster* and *Hill* have held that it does not matter whether the Liquidator pursues claims or not or where he pursues them; and (iii) in any event, the Liquidator can sue Appellants or others in the Liquidation Proceeding.

Fourth, given the many documented reasons for giving the Liquidator lawful possession to use the discovery information in Israel in the Liquidation Proceeding, there is no basis to conclude that his application is pretextual, or that this contention is ripe. If the Liquidator has lawful possession to make use, if and when he seeks additional use, Appellants should raise such an objection *at that time, if and when the issue is ever real and joined,* particularly since *Hill* held that even if it were necessary to bring any new claims in a separate lawsuit outside of the ongoing foreign proceeding for which the information was originally sought, this does not matter. *Hill*, at *4; *see also Lancaster*, 90 F.3d at 42 (it is irrelevant whether the Liquidator "may or may not exercise its option to acquire whatever claims it may find and may or may not decide to commence a proceeding to pursue those claims").

In sum, the Liquidator continues to have the same, urgent need for, and ability to employ the discovery "with some advantage to serve some use" in the *Liquidation Proceeding* (i) by submitting such information to the Israel District Court to issue the adjudicatory orders that are in its liquidation toolbox, and (ii) if

the evidence warrants, to bring claims against property or persons *in the Liquidation Proceeding* or as otherwise authorized. While we cannot stop Appellants from filing a further application in the District Court to try to delay production even further and exhaust the statute of limitations, there is no basis for this Court to reverse or remand.

## **CONCLUSION**

For the foregoing reasons, Petitioner-Appellee Gissin respectfully requests this Court to affirm the District Court in all respects and not to remand.

Dated: March 29, 2016

Respectfully submitted,

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP

By: _s/ Michael S. Devorkin_____
Michael S. Devorkin
Alexander K. Parachini
437 Madison Avenue
New York, New York  10022
(212) 907-7348
mdevorkin@golenbock.com

Attorneys for Petitioner-Appellee Guy Gissin,
solely in his capacity as Court-Appointed
Liquidator of Sybil Europe Public Co. Limited

## <u>CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)</u>

I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 10,349 words, excluding the parts of the brief exempted under Fed. R. Civ. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportional typeface us Microsoft Word in 14 point font Times New Roman style.

Dated:  March 29, 2016

Golenbock Eiseman, et al. LLP
Attorneys for Petitioner-Appellee
437 Madison Avenue, FL 35
New York, New York 10022
212-907-7300